UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JAVIER MARTINEZ,                                            :

                                                  :      07 Civ. 3156 (WHP) (GWG)
                 Plaintiff,
   -v.-                                      :      REPORT AND
                                                      RECOMMENDATION
MICHAEL J. ASTRUE,                                          :
Commissioner of Social Security,
                                                  :

                 Defendant.                         :
----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Plaintiff Javier Martinez brings this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security (the "Commissioner") denying a claim for Supplemental Security Income ("SSI") brought on his behalf when Martinez was a minor. The Commissioner has moved for judgment on the pleadings and dismissal pursuant to Fed. R. Civ. P. 12(c). Martinez has cross-moved for judgment on the pleadings seeking reversal of the Commissioner's decision and remand for a new hearing. For the reasons stated below, the Commissioner's motion should be denied, and Martinez's motion should be granted.

I.     BACKGROUND

     A.     Procedural History

       Maria Martinez, the plaintiff's mother, filed for disability benefits on plaintiff's behalf on January 12, 2005, when plaintiff was 15 years old. See Administrative Record (annexed to Answer, filed Sept. 26, 2007 (Docket # 8)) ("R."), at 12, 61. The application was denied on June 17, 2005. R. 62-65. Ms. Martinez requested a hearing before an Administrative Law Judge ("ALJ"), R. 66, and a hearing was held on December 19, 2006, R. 140-56. The ALJ found that

the plaintiff was not disabled, R. 9-18, and the Appeals Council denied plaintiff's request for review on February 23, 2007, R. 5-7. Plaintiff timely filed this action on April 19, 2007. See Complaint, filed Apr. 19, 2007 (Docket # 2).

  B. <u>Maria and Javier Martinez's Written Statements and Testimony</u>

Javier Martinez was born on February 13, 1989. R. 32, 41. He lives with his mother and younger sister. R. 143. At the time of the hearing before the ALJ, Martinez was seventeen years old, R. 143, but had only reached the eighth grade at school because he repeated several grades, R. 83, 107, 144.

In the materials she completed to apply for SSI, Ms. Martinez that her son "has problems learning every subject . . . [as well as] speaking clear[ly] and pronouncing. In addition, he misses a lot of days of school because he suffers from inflamation of the throat and that prevents him from eating talking, playing." R. 35. She also stated that his rash causes Martinez to be "very unco[m]fortable, irritated, unhappy. He almost can not sleep because he spends the night scratching himself." R. 35. Martinez sees Dr. Jose Perez for treatment of these conditions. R. 35-36.

Ms. Martinez indicated that her son's ability to communicate was somewhat limited because he could not repeat stories he had heard, or explain why he did something. R. 44. She also indicated, however, that he talks with family and friends, asks for what he needs, can answer the phone, and uses conditional sentences. R. 44. Ms. Martinez noted that her son can read books, magazines, and newspapers, and can do basic arithmetic. R. 45. She noted further that Martinez has no physical limitations, R. 45, and that he generally gets along with others, R. 46, but that he has some difficulty taking care of his personal needs and safety, R. 47.

At the hearing before the ALJ, Ms. Martinez testified that Martinez was not doing well in school and that "[h]is teacher tells [her] that [her son] doesn't assimilate the class." R. 145. In response to being asked "[w]hat complaints or symptoms does Javier have that you think make him disabled," Ms. Martinez stated that "[h]e doesn't wanna go home, doesn't, wanna get out of the home, he sleeps a lot, he doesn't leave the home, and he's quiet all the time." R. 145. Martinez's doctor has suggested that he receive mental health treatment, but Ms. Martinez stated that she has "not concerned [herself] with taking him." R. 145-46. Ms. Martinez stated that she has to tell her son to bathe and brush his teeth. R. 148.

Martinez testified that he does not like to go to school because he is afraid of the other students, and they give him trouble because he wears clothes with colors associated with gangs. R. 144. Martinez stated that he has one friend who is two years younger, and that they play video games together. R. 146. He stated that when he is not at school he sleeps because "there's nothing else to do." R. 147. He watches television sometimes, but does not go out to the movies often. R. 148. Martinez stated that he used to play sports, but does not anymore because he feels that he is "too old to play . . . . with the younger kids." R. 149.

C.   School Records

Martinez's Individualized Education Plan ("IEP") from the New York City Board of Education states that he is learning disabled, and recommends that he receive special education teacher support services within a general education placement. R. 69. Within the IEP, Martinez's reading skills are characterized as "within the Low Average range," while his math skills are described as "within the Average range." R. 71. The IEP also notes that a teacher reported that Martinez is "extremely depressed and does not work comfortably in [a] group." R.

71. In another section of the IEP, Martinez is described as "severely depressed." R. 72. Martinez meets with a counselor once a week at school. R. 78; see also R. 137.

In January 2002, Martinez was evaluated by school psychologist Miguel A. Nunez-Caro. R. 83-85. He found Martinez's verbal IQ and Full Scale IQ to be "within the Low Average range of intellectual ability." R. 84. Nunez-Caro concluded that while Martinez is "somewhat anxious" and "easily overwhelmed by external stimuli," any "[r]elevant emotional issues don't seem to be affecting [his] overall functioning." R. 85.

In a report dated November 23, 2004, school psychologist Elena Soto-Raspa found Martinez's "global reading skills [to be] within the Low Average range," while his "reading comprehension skills are within the Borderline range." R. 87. The report stated that Martinez's math skills are "within the Average range." R. 87. Soto-Raspa concluded that Martinez "seems very depressed: partly due [to] his difficulty in the area of reading comprehension and also because he seems to think that his family and certain friends think badly of him." R. 87.

On February 28, 2005, Martinez's reading teacher completed a form for the New York State Office of Temporary and Disability Assistance – Division of Disability Determinations. R. 90-97. He noted that Martinez had a "serious problem" participating in discussions, and "an obvious problem" "reading and comprehending written material," but otherwise had no or only slight problems in the area of "acquiring and using information." R. 91. The teacher also noted that Martinez has "obvious" or "serious" problems focusing and completing tasks, but is able to complete single instructions, take turns with others, and pay attention when spoken to directly. R. 92. In the area of "interacting and relating with others," the teacher noted that Martinez has "obvious" or "serious" problems expressing thoughts and relating stories in conversation,

4

although he has no problem cooperating, following rules, or respecting authority. R. 93. The teacher also noted that Martinez has obvious problems "using appropriate coping skills to meet [the] daily demands of [the] school environment," but otherwise has at most only slight problems caring for himself, R. 95, although he noted that Martinez was absent from class often, R. 90; see also R. 138. Finally, the teacher noted that Martinez has no problems "moving about and manipulating objects." R. 94.

D.     Health Records

On February 20, 2005, Dr. Perez filed out a form provided by New York State. R. 98-102. Dr. Perez noted that Martinez's records show that he is free of any "chronic illness." R. 99; see also R. 123-28. Dr. Perez found that Martinez's physical and cognitive functioning and behavior were age appropriate. R. 101-02.

On March 23, 2005, Dr. Joshua Algaze of Diagnostic Health Services examined Martinez. R. 103-04. On Axis I, he diagnosed Martinez with "Adjustment reaction to illness with depression. Learning disorder. Speech development disorder." R. 104.[1] His "suggested

---

[1] The term "axis" refers to the "multiaxial system," which "provides a convenient format for organizing and communicating clinical information, for capturing the complexity of clinical situations, and for describing the heterogeneity of individuals presenting with the same diagnosis." The system is intended to "help the clinician plan treatment and predict outcome." Diagnostic and Statistical Manual of Mental Disorders 25 (4th ed., text revision 2000). The axes are as follows:

| | |
|---|---|
| Axis I | Clinical Disorders |
| | Other Conditions That May Be a Focus of Clinical Attention |
| Axis II | Personality Disorders |
| | Mental Retardation |
| Axis III | General Medical Conditions |
| Axis IV | Psychological and Environmental Problems |
| Axis V | Global Assessment of Functioning |

5

therapy" was as follows: "The claimant was strongly encouraged to seek psychiatric treatment. Psychological testing would also be indicated. Prognosis is guarded. It is my opinion this claimant would not be able to manage his own funds." R. 104.

On April 22, 2005, Dr. Robert Shalhoub of Diagnostic Health Services examined Martinez. R. 105-07. Dr. Shalhoub's "impression" was that Martinez has a "[s]ignificant learning disability with particular respect to reading and writing," and there is a "[p]ossible underlying psychiatric depression undiagnosed at this point." R. 107.

On May 13, 2005, psychologist Dr. Mindy Zelen examined Martinez. R. 108-11. She found that his verbal scale IQ was 71, his performance scale IQ was 76, and his full scale IQ was 72. R. 109. She concluded:

> The claimant is able to attend, follow, and understand some age-appropriate directions. He is able to complete some age-appropriate tasks. He appears able to maintain appropriate social behavior and interact adequately with peers and adults. He appears able to learn in accordance with cognitive functioning. The results of the evaluation do not appear consistent with any cognitive problems that would significantly interfere with the claimant's ability to function on a daily basis.

R. 110. She diagnosed Martinez with a "Learning disorder, NOS" on Axis I, "Borderline intellectual functioning" on Axis II, and "Chronic ear infections [and] Back pain" on Axis III. R. 110.

On May 24, 2005, Martinez was examined by speech-language pathologist Mindy Singer. R. 112-15. Singer administered a test known as the "Clinical Evaluation of Language Fundamentals" and in seven of the eleven "subtests" Martinez's percentile rank was 0.1 or below. R. 113-14. Singer interpreted all of Martinez's scores to be three standard deviations

---

Id.

6

below the mean.  R. 113-14.  She found that Martinez exhibited "severe receptive and expressive language delays."  R. 114.  Singer also found that Martinez could "adequate[ly]" "communicate[] and interact[] with the people around him."  R. 114.

On June 17, 2005, Dr. Radharani Mohanty examined Martinez.  R. 116-21.  Dr. Mohanty found that Martinez had a learning disability and speech and language delays, which constituted "severe" impairments, but concluded that the impairments did "not meet, medically equal, or functionally equal the listings" in the Social Security Regulations.  R. 116.  In the domain of "acquiring and using information," Dr. Mohanty noted that Martinez's IQ scores were in the low to mid seventies and that Martinez has difficulty "understanding and participating in class discussion and providing organized oral explanation," but found that Martinez's impairment in this domain was "less than marked."  R. 118.  Dr. Mohanty noted that Martinez's teacher reported that he has trouble focusing and working at a reasonable pace, but found that his limitation in the domain of "attending and completing tasks" was "less than marked," noting that "during testing [Martinez] indicated a cooperative deliberate, orderly and self-correcting behavior."  R. 118.  Dr. Mohanty also found that Martinez's limitation was "less than marked" in the domain of "interacting and relating with others."  R. 118.  In the domains of "moving about and manipulating objects," "caring for yourself," and "health and physical well-being," Dr. Mohanty found that Martinez has no limitations, but did not include comments explaining these findings.  R. 119.  Dr. Mohanty concluded his report by stating the following:

> The claimant has had a history of special education and S/L [presumably, Speech/Language] therapy but had met his goals and has been reclassified.  S/L skills appear appropriate according to teacher and several consultative tests completed.  A current S/L evaluation completed determined severe receptive/expressive language deficits however, additional evidence in file disputes findings.  The S/L eval [sic] would not have controlling weight in regard

    to the claimant's language skills.  Based on evidence in file, the claimant does not meet or equal the severity of the listings and therefore, would not be considered disabled.

R. 121.

    E.    <u>Consulting Physician's Testimony</u>

Dr. Matilda Brust testified at the hearing before the ALJ.  R. 140, 142-43, 151-54.  Dr. Brust opined that Martinez's problems stem both from his "below average" "cognitive abilities" and "a reactive depression to the fact that he's in a totally inappropriate education environment." R. 151.  The ALJ asked Dr. Brust to be more specific in her characterization of Martinez's impairment and she described it as an "adjustment disorder."  R. 152-53.  In addressing the regulations' functional domains, Dr. Brust found that Martinez's limitations were less than marked, except for "caring for yourself" where she found a marked limitation.  R. 154.

    F.    <u>ALJ's Opinion</u>

The ALJ found that Martinez "has the following 'severe' impairments: borderline intellectual functioning and reactive depression (20 CFR 416.924(c))."  R. 17.  The ALJ also found, however, that Martinez's impairments "do not meet or medically equal" any impairment listed in the regulations.  R. 17.

The ALJ then considered whether Martinez's impairments functionally equal any of the listings, R. 16, by assessing his functioning in terms of the six domains listed in 20 C.F.R. § 416.926a(b)(1).  The domains listed in 20 C.F.R. § 416.926a(b)(1) are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  Under 20 C.F.R. § 416.926a(d), an individual must have a marked limitation in two of the

8

domains or an extreme limitation in one domain to be considered disabled. The ALJ concluded that Martinez has a marked limitation in "caring for himself," R. 16, but that any limitation in the other domains was less than marked, R. 16-17.

II.     APPLICABLE LAW

   A.     Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner pursuant to 42 U.S.C. § 405(g) must first determine whether the Commissioner applied the correct legal standard. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). In addition, a reviewing court must also determine whether the decision is supported by substantial evidence. See, e.g., Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir.) (citing Pollard v. Halter, 377 F.3d 183, 188 (2d Cir. 2004)), cert. denied, 127 S. Ct. 2981 (2007); Tejada, 167 F.3d at 773; see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "Substantial evidence" is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); accord Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists. See generally Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder." (citation omitted)). "The role of the reviewing court is therefore 'quite limited

and substantial deference is to be afforded the Commissioner's decision.'" Hernandez v. Barnhart, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quoting Burris v. Chater, 1996 WL 148345, at *3 (S.D.N.Y. Apr. 2, 1996)).

Notwithstanding this deferential standard, however, it is well settled that the ALJ has an affirmative duty to develop the record in a disability benefits case and that remand is appropriate where this duty is not discharged. See, e.g., Rosa v. Callahan, 168 F.3d 72, 79-84 (2d Cir. 1999); Clark v. Comm'r of Social Security, 143 F.3d 115, 118-19 (2d Cir. 1998). The non-adversarial nature of a Social Security hearing requires the ALJ "to investigate the facts and develop the argument both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 111 (2000) (citing Richardson v. Perales, 402 U.S. 389, 400-01); accord Ceballos v. Bowen, 649 F. Supp. 693, 698 (S.D.N.Y. 1986). This duty applies even in cases where the claimant is represented by counsel. See, e.g., Rosa, 168 F.3d at 79 (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)); Ceballos, 649 F. Supp. at 698. The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity. See, e.g., Cruz v. Sullivan, 912 F.2d 8, 11-12 (2d Cir. 1990); Echevarria v. Secretary of Health and Human Servs., 685 F.2d 751, 755-56 (2d Cir. 1982).

Further, while the ALJ need not "reconcile every conflicting shred of medical testimony," Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981), he or she must discuss the relevant evidence and factors "crucial" to the overall determination with "sufficient specificity to enable [reviewing courts] to decide whether the determination is supported by substantial

evidence," Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (citing Treadwill v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983)); accord Polidoro v. Apfel, 1999 WL 203350, at *7 (S.D.N.Y. Apr. 12, 1999) ("The ALJ's failure to mention [certain relevant] evidence and set forth the reasons for his conclusions with sufficient specificity hinders the ability of a reviewing court to decide whether his determination is supported by substantial evidence." (citation omitted)).

      B.     Legal Standard Governing Evaluation of Disability Claims for Children

To qualify for SSI, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 1382c(a)(3)(C)(i). The Social Security Regulations provide a three-step sequential analysis to determine whether a child is disabled and eligible for SSI. 20 C.F.R. § 416.924(a)-(d); see Pollard, 377 F.3d at 189. First, the ALJ is to consider whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment(s) that is severe," which is defined as an impairment that causes "more than minimal functional limitations." Id. at § 416.924(c). Finally, if the ALJ finds a severe impairment, he or she must then consider whether the impairment "medically" or "functionally" equals a disability listed in the regulatory "Listing of Impairments." Id. at 416.924(c), (d); see also id. at Pt. 404, Subpt. P, Appendix 1.

In order to demonstrate functional equivalence, the child must exhibit "marked" limitation in two of six functional domains described in the regulations, or "extreme" limitation in one of the domains. Id. at § 416.926a(a); see Pollard, 377 F.3d at 190. The first five domains

consider the child's ability to acquire and use information, attend and complete tasks, interact and relate with others, move about and manipulate objects, and care for oneself. Id. at § 416.926a(b)(1). The sixth domain considers the child's health and physical well-being. Id.

A child has a "marked" limitation when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). "'Marked' limitation . . . means a limitation that is 'more than moderate' but 'less than extreme.'" Id. An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. at § 416.926a(e)(3)(i).

III.   DISCUSSION

The Commissioner has moved for judgment on the pleadings on the ground that there is substantial evidence supporting the ALJ's decision that Martinez is not disabled. See Notice of Motion, filed Feb. 25, 2008 (Docket # 13); Memorandum of Law in Support of the Commissioners' [sic] Motion for Judgment on the Pleadings, filed Feb. 25, 2008 (Docket # 14). Martinez does not contest the Commissioner's assertion that the ALJ's decision was supported by substantial evidence. See Plaintiff's Memorandum of Law in Opposition to the Commissioner's Motion for Judgment on the Pleadings and in Support of Plaintiff's Cross-Motion for Judgment on the Pleadings, filed Apr. 22, 2008 (Docket # 18) ("P. Mem.").[2] Instead, Martinez has filed a cross motion for judgment on the pleadings seeking remand for rehearing on

---

[2] Martinez does assert that "the record contains some fairly compelling evidence that Javier is, in fact, disabled," P. Mem. at 18, and discusses the evidence that supports this assertion, see id. at 18-21. Martinez, however, characterizes this discussion as a "backdrop [against which] the ALJ's performance of his duty to develop the record should be viewed." Id. at 21.

the basis that the ALJ failed to adequately develop the record or explain the basis of his decision. See Notice of Motion, filed Apr. 22, 2008 (Docket # 17) ("P. Motion"); P. Mem. As the question of whether the ALJ's decision was supported by substantial evidence is not at issue, we address only Martinez's arguments for remand.

      A.      The ALJ Failed to Address Crucial Evidence in the Record

Martinez asserts that remand is required because the ALJ failed to consider the evidence regarding his "language problems," P. Mem. at 25, specifically the report of speech-language pathologist Mindy Singer, id. at 18-20. Singer administered a test known as the "Clinical Evaluation of Language Fundamentals" and in seven of the eleven "subtests" Martinez's percentile rank was 0.1 or below. R. 113-14. Singer interpreted all of Martinez's scores to be three standard deviations below the mean. R. 113-14. She concluded that Martinez has "severe receptive and expressive language delays." R. 114. The ALJ did not mention this report in his decision.

The regulations provide that an "extreme" limitation "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." Id. at § 416.926a(e)(3)(i). Singer found that Martinez's scores on the tests she administered were three standard deviations below the mean. Under 20 C.F.R. § 416.926a(e)(2)(i), (3)(i), such standardized test scores indicate that Martinez may have an extreme, or at least a marked, limitation in the areas of "acquiring and using information" or "interacting and relating with others." An extreme limitation by itself would have been sufficient for a finding of a disability. In addition, because the ALJ found that Martinez had a

marked limitation in caring for himself, a finding of a marked limitation in one of the other domains would mean that Martinez met the definition of disabled under the regulations.

Given the obvious potential relevance of the results of this speech test to an evaluation of the domain areas of "acquiring and using information" and "interacting and relating with others," this test should have been addressed further at the hearing and in the ALJ's decision. In other words, an understanding of the relevance of this test appears to be "crucial" to the evaluation of Martinez's abilities. Ferraris, 728 F.2d at 587. Accordingly, without an explanation from the ALJ as to how he took Singer's report into account, this Court cannot determine whether the ALJ's decision was supported by substantial evidence. See id.; Miles, 645 F.2d at 124; Polidoro, 1999 WL 203350, at *7. Thus, the case should be remanded for additional evidence on and for consideration of the significance of Singer's report.

      B.      The ALJ's Reliance on Dr. Brust's Testimony

Martinez asserts that remand is required also because the ALJ's questioning of Dr. Brust was "less than perfunctory," P. Mem. at 21, and because "[the ALJ] seems to have relied completely on [Dr. Brust's] judgment" in "determin[ing] the degree of Javier's limitations in the six domains," id. at 26.

During her testimony, Dr. Brust testified that she considered three listed impairments, and gave one sentence explanations for why she found that Martinez's impairments did not equal each listed impairment. R. 153. The ALJ did not ask for any further explanation. R. 153. Dr. Brust also testified that she found Martinez's impairments to be less than marked in five of the six domains, but did not give any explanation for her findings. R. 153-54. The ALJ again did not ask Dr. Brust to explain her conclusions. R. 153-54. The ALJ devoted a significant portion

14

of the "rationale" section of his decision to a discussion of Dr. Brust's testimony, and relied upon it in concluding that Martinez's limitations are less than marked in five of the six domains. R. 15-16.

It is not clear that the questioning of Dr. Brust was improper, however, because the ALJ discussed other evidence in the record in his decision. R. 15-16. He explicitly mentioned the reports of Dr. Algaze and Zelen, and noted that Dr. Mohanty found that Martinez's limitations were less than marked in all six domains. R. 16. In other words, the ALJ did not rely exclusively on Dr. Brust's judgment, as Martinez contends. Nonetheless, while the questioning of Dr. Brust was not improper, the ALJ may wish to take the opportunity on remand to question Dr. Burst further, if she is available, to obtain the basis for her conclusions.

C.   New Evidence

Martinez has submitted to this Court reports from a psychiatrist and an affidavit from his mother in further support of his disability claim. Affidavit of Maria Martinez, dated Apr. 17, 2008 (annexed as part of Ex. A to P. Motion) ("Martinez Aff."); Reports from Dr. Fernando Taveras, dated Mar. 24, and Apr. 7, 2007 (annexed as part of Ex. A to P. Motion) ("Taveras Reports"). Martinez admits that this evidence is dated after the disability period at issue and that the psychiatrist did not examine him until after the date of the ALJ's decision. P. Mem. at 30. Martinez also concedes that "[t]he period covered by plaintiff's application runs from the date of the application . . . through the date of the ALJ's decision," Plaintiff's Reply Memorandum of Law, filed June 17, 2008 (Docket # 21) ("P. Reply Mem."), at 7. Still, he asserts that the evidence "is arguably relevant to the time period for which benefits were denied," P. Mem. at 30,

because "[i]t is obvious that the major depression first diagnosed by Dr. Taveras in March 2007 might have predated the ALJ's January 19, 2007 decision," P. Reply Mem. at 7.

While it is doubtful that this newly-submitted evidence would be itself justify a remand – inasmuch as there is no explanation of why Martinez could not have provided the affidavit earlier or why the psychiatrist's report is not cumulative, see 42 U.S.C. § 405(g) – there is no harm in allowing this evidence to be presented at the new hearing following remand. Indeed, the ALJ should develop the record as appropriate to allow any additional relevant evidence.[3]

Conclusion

Martinez's motion for judgment on the pleadings (Docket # 17) should be granted. The Commissioner's motion judgment on the pleadings (Docket # 13) should be denied. The case should be remanded to the Social Security Administration for further proceedings consistent with this Report and Recommendation.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. William H. Pauley, and to the undersigned, at 500 Pearl Street, New York, New York 10007.

---

[3] Martinez also asserts that the ALJ failed "to advise Ms. Martinez of Javier's right to counsel and elicit from her an effective waiver of that right," P. Mem. at 23, and asks that the Court "require the Commissioner to demonstrate that there is little likelihood that the presence of counsel could have changed the outcome of the case," id. at 24. This question has now become moot in light of the fact that Martinez is represented by counsel, and the Court has concluded that the case should be remanded.

16

Any request for an extension of time to file objections must be directed to Judge Pauley. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: September 8, 2008
      New York, New York

                                                    _____
                                                    GABRIEL W. GORENSTEIN
                                                    United States Magistrate Judge

Copies sent to:

James M. Baker
Center for Disability Advocacy Rights
100 Lafayette Street, Suite 304
New York, NY 10013

Susan D. Baird
Assistant United States Attorney
86 Chambers St., 3rd floor
New York, NY 10007

Any request for an extension of time to file objections must be directed to Judge Pauley. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: September 8, 2008
      New York, New York

                                       GABRIEL W. GORENSTEIN
                                       United States Magistrate Judge

Copies sent to:

James M. Baker
Center for Disability Advocacy Rights
100 Lafayette Street, Suite 304
New York, NY 10013

Susan D. Baird
Assistant United States Attorney
86 Chambers St., 3rd floor
New York, NY 10007

17